May it please the Court. Good morning, Your Honors. Jamel Cunningham on behalf of Plaintiff Celeste David. Your Honors, getting, I believe that we have set forth arguments in the brief that I won't spend too much of my time rehashing, but I think it's very important for me to start off with whether or not Ms. David is similarly situated to her comparables. Christopher Reyes, who is an Asian male under 40 years old, was hired to replace Ms. David upon her retirement, who's African-American female in her 60s. There's ample testimony in the record that Reyes did replace David. Reyes, first of all, testifies over and over again that he was trained by David, that he worked under David, when she did, when she performed the duties as security analyst. He has firsthand knowledge of watching what she does day to day, and when he was hired to replace her in that security analyst position, he performs those day-to-day duties. In addition to Christopher Reyes' testimony, Ms. David's supervisor before she retired, Ms. Robin Jackson also testified that Reyes performs David's duties, that when David retired, they needed someone to replace her, and that Reyes was the person to do that. Beyond Reyes' testimony, there's other testimony besides Jackson. There's also, I believe, Steve Dorner, who would be the new supervisor of the security analyst position, who says that he was looking for someone to replace David. Everyone who works, who has knowledge of this duty and what they're doing, says that Reyes replaced David. I think it's very telling that Reyes himself, who knows the duty, says that this is what I was hired to do and he's doing it. So I think that that's again, telling evidence that they're similarly situated in that he performs those duties. Now, defendant does make the argument, I'm sorry, City Colleges does make the argument that Reyes is not similarly situated to David because he performed some additional duties. First of all, those additional duties are not the core duties. The core duties are the security analyst duties. Reyes was hired under the job description of security analyst. He performed some additional duties as a functional analyst, which was his old position. But notably, number one, those are not listed as his job duties as security analyst. Number two, during his interview for the security analyst position, he asked, he said, well, can I continue to do my old duties as functional analyst because I want to further my knowledge. I want to continue learning in this area. The position for security analyst was already set. The pay grade was already set. When Reyes volunteered and said I'll do the additional duties, no one told him no. And at the same time, there's evidence that suggests that Reyes was told that someone will replace him. So there's no way he was hired and paid to do both of those job duties when the record is clear that someone else was going to be hired to do those duties. City Colleges also argues that Reyes performs additional duties in that he works on the interactive hub with employee Roseanne Rodriguez. And is it, let's, I just want to be clear about what the nature of our dispute is here. I don't understand your client to be challenging those underlying facts that, in fact, Mr. Reyes did those additional duties. Your argument really is that they're just not that consequential. Am I understanding? Yes, Judge. They're not that consequential, number one. And number two, he wasn't hired to do those duties. He started doing the interactive hub duties in 2014, which is a year and a half after he's already putting in security analyst duties and being paid to do that. Yes. Let me ask this other, what I see as a problem with the similarly situated analysis, and that is that both Mr. Reyes and Ms. Rodriguez have college degrees. And so there, another difference is their qualifications over and above their job duties. They, the City College apparently places a very high value on a college degree. Maybe they overvalue it, but that's kind of their call. Well, Judge, their argument is, number one, that if we go back, that was one of the pro-offered reasons. The argument is that it's protection, number one, because the job duty that Ms. David was actually in, the title that she was actually in, manager in user services, that job description says it has to have a college degree, and she doesn't have a college degree. So the fact that they typed the words on there, it isn't, isn't, doesn't have a lot of weight and a lot of value, number one. Number two, on the security analyst job description, it says that it's not exhaustive. I, I can quote it to you, but on the face of the security analyst job description, it says that the, the qualifications are not an exhaustive list of what's necessary for the job. And beyond that, she was doing the job. Craig Lynch, the Vice Chancellor, said that she was doing the job of security analyst. Her, Chris Reyes said that he believed she was the senior security analyst. Robin Jackson, her former supervisor before plaintiff even retired, asked if she could be retitled. But there are a lot of employment contexts where you do the exact same job, but you get a little bonus if you get a degree or you get an advanced degree. It's a pretty common employment situation where an employer will reward someone for having an extra credential, even though the job duties are the same. Well, Judge, I'd like to address that also under the Equal Pay Act argument, because I think it's very similar. Under the case King v. Acosta, I think it's very clear, the case is very clear, where it says when that's asserted, it's asserted, it has, it's asserted as an affirmative defense, and there has to be some proof offered other than just the statement that education plays a role in the disparity of pay, and there's just no evidence there. Defendants offered nothing other than the statement that, oh, well, he has a college education. And I'd also like to add that in addition to, that argument is made as a pro-offered reason for not giving her a raise. So it's that she wouldn't be qualified for the job. I believe that was, that was what defendants argument was, that she wouldn't be qualified because she didn't have a college degree, and that's not true. She worked in the job doing the duties for 15 years without any write-ups, without any suspensions, without any incident for 15 years. So that pro-offered reason cannot be a real reason if she's doing the job. It's just, it's just a smokescreen for saying that this young Asian male, we're going to pay him more to do the job than you, than the 60, the retiring 60-year-old African-American woman. If, and to speak a little further, moving forward into the pretext issue, all of the reasons that are offered for defendants, reason for not granting the, granting plaintiff's request for a title change, or just for a review of her position. Before I get into that, I do want to speak really quickly on City Colleges' policies. The job analysis questionnaire policy is very important here. There's no way for the defendant to even know whether or not plaintiff is entitled to a new position, or whether she should get any increase unless they do a job analysis questionnaire. Plaintiff submitted it to Craig Lynch. The evidence shows that Craig Lynch never received a response. He did send an email to the Department of Compensation to Jane Barnes. Jane Barnes doesn't even know if she responded to him. She gives multiple reasons as to why she doesn't think plaintiff should have gotten the, plaintiff's request should have been granted. But she never did an analysis of the job, she never did an analysis of her job duty. She did no investigation. She did no inquiry at all. She doesn't even know what plaintiff was actually doing. So the fact that that policy, and there is case law cited that suggests the deviation from their own policy is pretext. I'd also like to point out the internal EEO investigation that the district court didn't even address at all for some reason. But the EEO investigation is also telling in that these requests and these complaints that plaintiff made were just completely ignored. There's no evidence whatsoever that any investigation was done. There's an extensive EEO policy that outlines what happens when a person believes that they have been discriminated against. Plaintiff went through the appropriate channels, made those complaints to try and get the matter rectified. There was no response, even after she retired. There's evidence that suggests that even after someone retires, or even after they've left the employment of defendant, the investigation can go on. No one ever contacted Lynch. He is the alleged discriminator. He was never even contacted about the EEO complaint. Other individuals who would have pertinent knowledge about whether or not there was actually a disparity in pay on the basis of race and gender. Plaintiff's supervisors, the Department of Compensation, who would know of that information. No one was ever contacted. No one ever responded, and just left plaintiff to continue to work nine to ten months in her retirement being underpaid. And I would mention doing the job of those two employees. There's ample evidence in the record that suggests that people's soft duties should be done by two people. Christopher Reyes, in addition to his people's soft duties, gets assistance. Even in the volunteer duties that he does, he gets assistance. Plaintiff asked for assistance, and she asked to be compensated for the double work that she was doing, and she was not. When, Ms. Cunningham, when did she make that request, the request that you just mentioned? The request for the additional pay? I believe, Judge, it may have been in, I can't remember the exact date, but it was approximately nine to ten months before she retired, and she retired in June 2012. I did want to also go back to these pretextual reasons. Craig Lynch said that one of the reasons why the request wasn't granted, because plaintiff's work was transactional in nature, and it didn't involve critical thinking. She did the exact same thing as Christopher Reyes. So how is it critical thinking, and it's non-transactional when Christopher Reyes is performing the duties, but not when plaintiff is performing the duties. Further, he didn't even supervise plaintiff, but he would monitor her duties on a day-to-day. So how does he even know what work she did, and whether or not it was transactional in nature? He also states that, I'm sorry, Barnes sets forth that the approval would take several months. She didn't think that plaintiff should get a new position because the approval would take several months, and she was retiring in 2012, so it wouldn't be prudent. There's evidence and there's testimony that it could have been applied retroactively. So Barnes decided, well, you're about to retire, so your next nine to ten months, well, you don't get paid appropriately for it. I've already addressed the college degree argument. Again, Barnes says any new position in OIT would have required a new college degree. How do you know when you didn't do a JAQ? And then you don't even know if plaintiff would have needed a new position. She could have been reclassified into a different position. Her current position could have been changed. You don't know any of that because you never engaged in the process, but yet you're alleging that this is one of the reasons why she didn't get the increase. There's also the alleged reason that there would be a fine from CSRS. The statute that defendant relies on says that if there's an increase over 6%, then there would be a fine. You don't know what the increase would have been. It could have been 1%. It could have been 2%. There's no evidence at all from defendant of what that fine would have been. It could have been $1. So if plaintiff was entitled to an additional $20,000, you're not going to give it to her. Defendant's argument is that we could have been fined $1. There's absolutely no evidence there. So again, our position is that that is another contextual reason why plaintiff was denied, what plaintiff's request was denied. And I think the last reason, my time is limited here. I don't have time to flip pages. The last reason is that it's very important, is that it followed its internal policies, that it had to give Christopher Reyes a 10% increase because his union, pursuant to their internal policies, his prior position as a functional analyst was a union position. And because he was a part of the union, he had to get a 10% increase. So number one, that internal policy, number one, did not apply to Reyes. That internal policy only applied if you're getting a promotion. Reyes did not get a promotion. His functional analyst position was a grade 13 position with a salary range much higher than that of the senior security analysis. So it actually could be considered a demotion for him because it was a lower grade. The senior security analyst position was a lower grade, a grade 12. In addition, the salary range was much lower. So that internal policy didn't even apply to him, number one. Number two, even if it did apply, the 10% was discretionary, up two. They chose to give him that dollar amount because that's what they wanted to pay him, because that's what they thought the services were worth. Number three, it's ironic that the defendant claims that it follows these internal policies. Now, we have to follow internal policies, but failed to follow the internal policies as they related to plaintiff. Did not process her JEQ. Did not process her EEO internal complaint, which would have both, I think, and the argument is, and we think the jury should determine, that she should have been getting paid substantially more than she was getting paid. Do you want to reserve some time? I do, thank you, Judge. I don't want to cut you off. Thank you. I appreciate it. All right. Ms. Harper. While it is true that the facts in this case are largely undisputed, there are two facts I want to point out that were misstated today. One, and I believe the appellant stated that she was 60 years old. I might have heard her wrong, and she may have said 50, but I want to be very clear for the record that in her complaint filed in 2013, she alleges that she was 51 years old. In paragraph 8, she says approximately 51. Later, she says 51 years old. So that means in 2011, when she was asking for the job reclassification, she was 49. The decision maker then was in over 40 as well and in the protected category. The second fact that I want to correct as misstated is about the job requirement for her own job. For her manager end user position, it is clear, if you turn the page to that, that the equivalent of work experience and expertise may count as a college degree. So the manager end user that she had been operating for over a decade before, her counsel says 15 years before, that did allow for other than a college degree. City colleges, when they did actually relook at what she calls an old position, obviously we disagree with that, but even when they looked again at this senior security analyst position, they are allowed to decide that a college degree is required. Even if plaintiff or someone like Bill Gates could perform it without a college degree, that doesn't mean that we cannot compensate people differently or require it as a degree. And she has no evidence of pretext for requiring a college degree in that position. She also, less erroneous but still creating a misimpression, is that Lynch was the alleged decision maker. There were also two intervening decision makers that were involved here. Robin Jackson, who I think was also over 40 and a proponent of plaintiffs, she would agree. Robin Jackson was her supervisor and she tried to get a promotion for plaintiff and she proposed this in the budget and she had to pull it back from the budget because she wasn't going to be here in the next fiscal year. So plaintiff, while she's talked a lot about what's appropriate and fairness perceptions, the facts of this case are that this is a public employer with a fiscal year, which she retired at the end of June 2012 in that fiscal year, and appropriations and approval are very important and she seems to neglect those. What we do admit at the core is that the manager and user title that she had been operating under for 15 years was not correct. She did do security functions. But there is no evidence that she is entitled to any more money. We know that even if it had been reclassified, there's no evidence that that was a material adverse action. She has no evidence in the record that that would have affected her future job prospects or anything to the sort. So what she's really after is a pay raise, and even after hearing her speak, I'm still at a loss what they say the pay increase should be. What we do know is what she keeps referring to as the old position, what the position Christopher Reyes did receive was written up in a job title and given a pay range and classification, and that was, as she said, and the pay salary schedule and grade 12, exactly the grade 12 she had been at. Mr. Reyes actually had been in grade 13 before because I think it is undisputed that he has these functional application analysts and student financial aid and other monetary expertise with respect to computers that is above what she has. But nonetheless, even if we look at the job which was posted, which she actually could have applied for, the grade and range would have been the same. So she has no evidence that she would have been entitled to a job change. And aside from Rob Jackson trying to get her more money, and that did not work out because she wasn't there for another fiscal year, we have no evidence in the record that male or other persons in the protected category received extra pay when they had a colleague that left and they had to pick up extra work. Indeed, Christopher Reyes worked for 10 years to help her, then he was laid off, she retired, and he comes on for a position of a month to help her transition to learn to do reports. But when she leaves in June 30th of 2012, he is left fulfilling her job functions and he doesn't have anyone help him until again in 2013. He did not receive any pay raise for that, and she has no evidence that people at city colleges received any pay raise. What the evidence does show is that you need job descriptions and a formal change approved by the board, and the chancellor must make that recommendation. So with respect to her burdens, even for the age case, she cannot prove but for causation as she's required to under GROSS. There's too many reasons why this would have happened but for her age anyway. What is the reason for the failure to process the JAQ and the failure to respond to the EOC complaint? With respect to the EOC complaint, the record just shows sexual harassment complaints went forward sooner and she had left by the time and they never got to that one. That is not an adverse action, though, because she has an alleged sexual harassment. With respect to the JAQ, I think there is the email and plaintiff's own facts state that Ms. Barnes thought that she wouldn't get any more money anyway because she didn't have the college degree, so it didn't go any further. There's not a lot except for that there's inertia on the matter. But there is no evidence, even though there were extensive depositions in this case, that she would have ever been given more money without a college degree. I think there's people who are paid more even in any protected category who have college degrees are paid more, and indeed that speaks for itself. Thank you. All right. Ms. Cunningham. Thank you, Ms. Harper. Thank you. Judges, just a few quick responses. In regards to the statements that opposing counsel claimed are misstated, the facts that are misstated, I am not at all intentionally trying to lead the court. If it says she was 51 or whatever the facts are that are in the evidence, I wouldn't disagree with that. I think I'm just arguing a little too passionately right now and maybe misspoke, but I did want to state that. Further, the statement about her job requirement, the manager in user services stating that they would take equivalent experience and may count as a college degree, if anything, judges, I think that that supports Plaintiff's argument, that the fact that she didn't have a college degree did not mean that she couldn't perform the job duties and that she's not similarly situated to Reyes. I think it's important to make the distinction that they've raised that college degree issue in multiple arguments. The college degree argument is saying that that makes her dissimilar from Christopher Reyes in the performance of those security analyst duties, that he's performing them with a college degree and she was performing them without a college degree. Again, under King v. Acosta, there is no evidence in the record to support the disparity in pay based upon the education. Responding to opposing counsel's argument that Lynch was an alleged decision maker, Christopher Reyes, I believe, testifies to that. Robin Jackson, who was also Plaintiff's supervisor, was also a decision maker. I believe that's what counsel testified to. And asked that Plaintiff be paid $85,000 is what Robin Jackson testified to. So Robin Jackson also, I think that's also supportive to the Plaintiff, that Robin Jackson also thought that Plaintiff should be paid additional monies for the work that she was doing. But again, none of that was done. I think the question was asked why no one followed up on the JAQ and no one followed up on the EEO complaint. Defendants argue that there was, I'm not even sure what the argument is about the sexual harassment complaints, but the director of the EEO department did testify that sexual harassment complaints do take precedent. But there's no evidence in the record that there were sexual, I'm sorry to strike that, how many sexual harassment complaints were taken, were in the office at the time, or that that was in fact the reason why Plaintiff's EEO complaint was never addressed. Beyond that, defendants' policies that they like to address the complaints timely within 45 days. From the time she made the complaint, from the time that she retired, even to this date, she's never gotten a response. In addition... I'm going to have to ask you to make a concluding remark. I am done. Thank you, Judge. If you have a concluding remark, I didn't want to cut you off. I believe it may have just been redundant, so thank you. All right. Thank you, Ms. Harvey. The case is taken under advisement and will proceed...